1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  WALTER CORDELL, III,              ) Civil No. 07cv0079 J(RBB)
                                      )
12                  Plaintiff,        ) **REPORT AND RECOMMENDATION RE:**
                                      ) **GRANTING DEFENDANTS' MOTION TO**
13  v.                                ) **DISMISS [DOC. NO. 8] AND**
                                      ) **DENYING PLAINTIFF'S MOTION FOR**
14  JAMES E. TILTON; MARK             ) **LEAVE OF COURT TO AMEND**
    QUINTANILLA; SANTOS SANCHEZ;      ) **COMPLAINT [DOC. NO. 11]**
15  RONALD TRUJILLO,                  )
                                      )
16                  Defendants.       )
    _____   )

17

18       Plaintiff Walter Cordell, III filed a civil rights Complaint

19  [doc. no. 1] on January 11, 2007, pursuant to 42 U.S.C. § 1983.

20  Cordell asserts that Defendants imposed and enforced

21  unconstitutional conditions of parole that effectively banished

22  Plaintiff from his home.  (Compl. 2-3.)  Cordell also claims his

23  right to due process was violated when Defendants extended his

24  period of parole beyond the term he agreed to under a plea bargain.

25  (Id. at 4.)  Lastly, Plaintiff contends that Defendants deprived

26  him of freedom of association by banishing him from Orange County

27  because the banishment prevented him from attending his Alcoholics

28  Anonymous ("AA") group meetings and his church.  (Id. at 4-5.)

                                    1

Cordell seeks to recover monetary damages in excess of twenty-one million dollars, an injunction preventing Defendants from enforcing the conditions of his parole, an order that he be immediately released from parole, and "oversight of the [California Department of Corrections] to prevent future violations of individuals['] constitutional rights." (Id. at 7.)

On February 1, 2007, Defendants filed a Motion to Dismiss [doc. no. 8]. Defendants claim the Complaint should be dismissed for the following reasons: (1) Cordell is precluded from litigating this case under the fugitive disentitlement doctrine; (2) Defendants are absolutely immune from liability for damages; (3) Plaintiff's claims are not properly brought in a civil rights action; (4) Cordell's claims are without merit; and (5) Defendants are entitled to qualified immunity. (Defs.' Mem. 6-14.)

Plaintiff submitted an Opposition to Motion to Dismiss [doc. no. 13], which was filed nunc pro tunc to March 5, 2007. Cordell also filed a Motion for Leave of Court to Amend Complaint [doc. no. 11]. Plaintiff seeks to amend his Complaint to assert claims against the Defendants in their individual capacities rather than their official capacities. (Mot. to Amend 1.) On March 9, 2007, Defendants filed a Reply to Opposition to Motion to Dismiss [doc. no. 9]. The Court found Defendants' Motion suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1) [doc. no. 14].

For the reasons set forth below, the district court should **GRANT** Defendants' Motion to Dismiss and **DENY** Plaintiff's Motion for Leave of Court to Amend Complaint.

# I. FACTUAL BACKGROUND

Plaintiff was arrested and charged with attempted murder and assault with a deadly weapon after he severely beat a female victim with a wooden dowel; the victim suffered a broken finger and needed over fifty stitches in her head. (Compl. Ex. A at 1, Ex. M at 2, Ex. N at 2.)  On July 13, 2001, Cordell entered an agreement to plead guilty to assault with a deadly weapon inflicting great bodily injury in exchange for a three-year prison term followed by three years of parole. (Compl. Ex. N at 1-2.)

Plaintiff filed a federal petition for writ of habeas corpus, alleging that the three-year parole period to follow his incarceration constituted an unlawful extension of his sentence, resulting in double jeopardy, a denial of due process, and an ex post facto violation. (Compl. Ex. M at 3.)  The petition was denied.  (See id. at 15.)

After serving thirty months of his three-year sentence, Cordell was paroled on July 9, 2003, to San Diego County, and Defendant Santos Sanchez was assigned to be his parole agent. (Compl. Pl.'s Mem. of P. & A. at 1; Compl. Ex. A at 1.)  As a special condition of his parole, Plaintiff was not allowed to return to Orange County.  (Compl. Ex. A at 1.)  This condition was based on the victim's request and on the concern for her safety due to the violent nature of Cordell's offense.  (Id.)  Defendant Mark Quintanilla is the Parole Supervisor who approved Plaintiff's special conditions of parole.  (Id. at 5.)

Four months after he was released, Cordell violated his parole by returning to Orange County.  (Compl. Pl.'s Mem. of P. &

3

1 A. at 14; Compl. Ex. B at 1.)  He was sentenced to eight months in

2 custody.  (Compl. Ex. B at 1.)  During the hearing to determine his

3 sentence for the parole violation, the hearing officer directed the

4 California Department of Corrections ("CDC") to re-evaluate the

5 special condition of Petitioner's parole forbidding entry into

6 Orange County as possibly being too restrictive.  (<u>Id.</u>)

7      While serving his sentence for the parole violation, Cordell

8 filed an inmate appeal (known as a "CDC form 602") requesting that

9 his parole conditions be revised to remove the provision forbidding

10 him from entering Orange County and to eliminate a 7:00 p.m.

11 curfew.  (Compl. Ex. C at 5.)  The appeal was denied at the

12 informal level.  (<u>Id.</u> at 6.)  Plaintiff was interviewed by

13 Defendant Quintanilla on March 30, 2004, after which his appeal was

14 denied at the first formal level of review.  (<u>Id.</u> at 2-4.)  Cordell

15 also filed an appeal with the Board of Prison Terms, again

16 complaining that his parole conditions were illegal and should be

17 modified.  (Compl. Ex. D at 1.)

18      Plaintiff was released on July 3, 2004.  (Compl. Ex. A at 1.)

19 He violated his parole a second time by again returning to Orange

20 County and violating other special conditions of his parole

21 including drinking and possessing alcohol.  (Compl. Pl.'s Mem. of

22 P. & A. at 2; Compl. Ex. A at 1.)  He was sentenced to ten months

23 incarceration.  (Compl. Pl.'s Mem. of P. & A. at 2.)

24      While serving his sentence for the second parole violation,

25 Cordell filed an inmate appeal complaining that he was informed he

26 would be paroled to San Francisco and requesting that upon his

27 release he instead be allowed to return to San Diego.  (Compl. Ex.

28 E at 1-2.)  The appeal was denied as untimely.  (<u>Id.</u> at 3.)

4

1    Plaintiff then sent a 602 form directly to the CDC headquarters in

2    Sacramento, California, without first going through the lower

3    levels of review, but the form was returned to him for failure to

4    properly follow the appeal process.  (Compl. Pl.'s Mem. of P. & A.

5    at 15-16; Compl. Ex. F.)

6        Plaintiff then filed a state habeas petition in the Orange

7    County Superior Court alleging that he was told by his parole agent

8    he would be required to spend one extra year on parole based on his

9    violations, which Plaintiff alleged would violate his plea

10   agreement.  (Compl. Ex. S at 3.)  That petition was denied.

11   (Compl. Ex. T at 4.)  Cordell subsequently filed another habeas

12   corpus petition in the Orange County Superior Court claiming that

13   if he were paroled to San Francisco rather than San Diego it would

14   constitute unconstitutional banishment from his home.  (Compl. Ex.

15   H at 2.)  This petition was also denied.  (Id. at 3.)

16       Plaintiff was released from custody on May 24, 2006.  (Compl.

17   Ex. I at 1.)  He was paroled to Moreno Valley, California, which is

18   located in Riverside County.  (Id.)  Defendant Ronald Trujillo was

19   assigned to be his parole agent.  (Id.)  Cordell violated his

20   parole a third time by traveling beyond fifty miles of his home.

21   (Compl. Ex. J at 1-2.)  He was sentenced to four months

22   imprisonment.  (Id. at 2.)

23       After serving his sentence for the violation, Plaintiff was

24   paroled a fourth time.  (Defs.' Mem. 3.)  Cordell has now absconded

25   from his parole, and there is a parolee-at-large warrant currently

26   pending against him, which was issued by Defendant Trujillo.  (See

27   id.; Compl. 3; Civil Cover Sheet.)

28   //

5

1            **II. APPLICABLE LEGAL STANDARDS**

2  **A.    Motions to Dismiss Pursuant to Rule 12(b)(6)**

3       A motion to dismiss for failure to state a claim pursuant to

4  Federal Rule of Civil Procedure 12(b)(6) tests the legal

5  sufficiency of the claims in the complaint.  Davis v. Monroe County

6  Bd. of Educ., 526 U.S. 629, 633 (1999).  A claim can only be

7  dismissed "if it appears beyond doubt that the plaintiff can prove

8  no set of facts in support of his claim that would entitle him to

9  relief."  Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980) (quotations and

10 citations omitted).  The Court must accept as true all material

11 allegations in the complaint, as well as reasonable inferences to

12 be drawn from them, and must construe the complaint in the light

13 most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish,

14 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank,

15 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v.

16 Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v.

17 Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

18       The question is not whether the plaintiff will "ultimately

19 prevail but whether the claimant is entitled to offer evidence to

20 support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

21 A dismissal under Rule 12(b)(6) is generally proper only where

22 there "is no cognizable legal theory or an absence of sufficient

23 facts alleged to support a cognizable legal theory."  Navarro v.

24 Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica

25 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

26       The Court need not accept conclusory allegations in the

27 complaint as true; rather, it must "examine whether [they] follow

28 from the description of facts as alleged by the plaintiff."  Holden

1  <u>v. Hagopian</u>, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation

2  omitted); <u>Halkin v. VeriFone, Inc.</u>, 11 F.3d 865, 868 (9th Cir.

3  1993); <u>see also</u> <u>Cholla Ready Mix</u>, 382 F.3d at 973 (citing <u>Clegg v.</u>

4  <u>Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994))

5  (stating that on Rule 12(b)(6) motion, a court "is not required to

6  accept legal conclusions cast in the form of factual allegations if

7  those conclusions cannot reasonably be drawn from the facts

8  alleged[]").  "Nor is the court required to accept as true

9  allegations that are merely conclusory, unwarranted deductions of

10 fact, or unreasonable inferences."  <u>Sprewell v. Golden State</u>

11 <u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

12     In addition, when resolving a motion to dismiss for failure to

13 state a claim, the Court may not generally consider materials

14 outside the pleadings.  <u>Schneider v. Cal. Dep't of Corr.</u>, 151 F.3d

15 1194, 1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire &</u>

16 <u>Cas. Co.</u>, 120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay</u>

17 <u>Television Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th

18 Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the

19 complaint."  <u>Schneider</u>, 151 F.3d at 1197 n.1.  This precludes

20 consideration of "new" allegations that may be raised in a

21 plaintiff's opposition to a motion to dismiss brought pursuant to

22 Rule 12(b)(6).  <u>Id.</u> (citing <u>Harrell v. United States</u>, 13 F.3d 232,

23 236 (7th Cir. 1993); 2 James Wm. Moore et al., <u>Moore's Federal</u>

24 <u>Practice</u> § 12.34[2], at 12-72 (3d ed. 1997) ("The court may not

25 . . . take into account additional facts asserted in a memorandum

26 opposing the motion to dismiss, because such memoranda do not

27 constitute pleadings under Rule 7(a).").

28

7

But "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." <u>Parks Sch. of Bus.</u>, 51 F.3d at 1484 (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). The Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002); <u>Stone v. Writer's Guild of Am. W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to Dismiss.

**B.   <u>Standards Applicable to Pro Se Litigants</u>**

Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, however, the Court may not "supply essential elements of claims that were not initially pled." <u>Ivey v. Bd. of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." <u>Id.</u>; <u>see also</u> <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts

8

1   insufficient to state a claim under § 1983).  "The plaintiff must

2   allege with at least some degree of particularity overt acts which

3   defendants engaged in that support the plaintiff's claim."  <u>Jones</u>,

4   733 F.2d at 649 (internal quotation omitted).

5       Nevertheless, the Court must give a pro se litigant leave to

6   amend his complaint unless it is "absolutely clear that the

7   deficiencies of the complaint could not be cured by amendment."

8   <u>Noll v. Carlson</u>, 809 F.2d 1446, 1447 (9th Cir. 1987).  Thus, before

9   a pro se civil rights complaint may be dismissed, the court must

10  provide the plaintiff with a statement of the complaint's

11  deficiencies.  <u>Karim-Panahi</u>, 839 F.2d at 623-24.  Where amendment

12  of a pro se litigant's complaint would be futile, denial of leave

13  to amend is appropriate.  <u>See</u> <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80

14  F.3d 336, 339 (9th Cir. 1996).

15  **C.   <u>Stating a Claim Under 42 U.S.C. § 1983</u>**

16      To state a claim under § 1983, the plaintiff must allege facts

17  sufficient to show two things:  (1) A person acting "under color of

18  state law" committed the conduct at issue, and (2) the conduct

19  deprived the plaintiff of some right, privilege, or immunity

20  protected by the Constitution or laws of the United States.  42

21  U.S.C.A. § 1983 (West 2003); <u>Shah v. County of Los Angeles</u>, 797

22  F.2d 743, 746 (9th Cir. 1986).

23                  **III. DEFENDANTS' MOTION TO DISMISS**

24      Defendants move to dismiss Cordell's Complaint under Federal

25  Rule of Civil Procedure 12(b)(6) for failure to allege facts

26  sufficient to state a claim for relief under 42 U.S.C. § 1983.

27  (Defs.' Mem. 5.)  Specifically, they claim the Complaint fails to

28  state a claim because Cordell is precluded from litigating this

case under the fugitive disentitlement doctrine. (<u>Id.</u> at 6.)
These individual Defendants also allege that Plaintiff's claims for
damages should be dismissed because Defendants are absolutely
immune from liability for damages and are entitled to qualified
immunity for their official actions. (<u>Id.</u> at 7, 11.)
Additionally, they assert that Plaintiff's claims are not properly
brought in a civil rights action because they challenge the
duration and conditions of Cordell's sentence and, accordingly,
must be raised in a habeas corpus action. (<u>Id.</u> at 8.) Finally,
Defendants contend that Plaintiff's first and third causes of
action fail to state a claim because Cordell's parole conditions
are rationally related to his offense, and Plaintiff's second cause
of action fails to state a claim because exhibits N and O to the
Complaint show that there has been no violation of the plea
agreement. (<u>Id.</u> at 10-11.)

**A.   The Complaint Should Be Dismissed Under the Fugitive**
      **Disentitlement Doctrine.**

     Defendants first allege that Cordell's Complaint should be
dismissed because he is a fugitive from justice. (<u>Id.</u> at 6.)
The fugitive disentitlement doctrine provides that, "an individual
who seeks to invoke the processes of the law while flouting them
has no entitlement 'to call upon the resources of the Court for
determination of his claims.'" <u>Conforte v. Comm'r.</u>, 692 F.2d 587,
589 (9th Cir. 1982) (quoting <u>Molinaro v. New Jersey</u>, 396 U.S. 365,
366 (1970)). Courts have regularly applied the doctrine to dismiss
both criminal appeals and related civil proceedings instituted by
fugitives. <u>See</u>, <u>e.g.</u>, <u>Molinaro</u>, 396 U.S. at 366 (appeal from
criminal conviction); <u>United States v. $129,374 in U.S. Currency</u>,

769 F.2d 583, 587-88 (9th Cir. 1985) (civil forfeiture proceeding);

Conforte, 692 F.2d at 589-90 (appeal from decision of tax court

arising from criminal conviction for tax fraud); Doyle v. Dept. of

Justice, 668 F.2d 1365, 1365-66 (D.C. Cir. 1981) (suit brought

under the Freedom of Information Act for records relating to

plaintiff's criminal sentence); Griffin v. New York Corr. Comm'r,

882 F. Supp. 295, 297 (E.D.N.Y. 1995) (§ 1983 civil rights case);

Clark v. Dalsheim, 663 F. Supp. 1095, 1096-97 (S.D.N.Y. 1987)

(habeas corpus petition).

But application of the fugitive disentitlement doctrine is

discretionary.  United States v. Van Cauwenberghe, 934 F.2d 1048,

1054-55 (9th Cir. 1991) (citing Katz v. United States, 920 F.2d

610, 611-12 (9th Cir. 1990); Hussein v. I.N.S., 817 F.2d 63, 63

(9th Cir. 1986)).  It does not deprive the Court of jurisdiction to

hear a plaintiff's claims, but rather it authorizes their dismissal

based on equitable considerations.  Id. (citations omitted).  It is

inequitable to allow fugitives "to press those cases where they

expect to receive some benefit, while refusing to accept decisions

imposing some burden . . . ."  Clark, 663 F. Supp. at 1096

(citations omitted).

Allowing a fugitive to litigate his claims may also tend to

encourage prison escapes and parole violations in cases where

individuals believe their confinement or parole conditions are

illegal or unreasonable.  Id. (citing Estelle v. Dorrough, 420 U.S.

534, 541-42 (1975); Lewis v. Delaware State Hosp., 490 F. Supp.

177, 182 (D. Del. 1980)).  "Disentitlement punishes those who evade

the reach of the law and thus discourages recourse to flight."

Antonio-Martinez v. I.N.S., 317 F.3d 1089, 1092 (9th Cir. 2002)

11

1   (citing <u>Parretti v. United States</u>, 143 F.3d 508, 510 (9th Cir.

2   1998)).

3       For application of the disentitlement doctrine to be

4   appropriate, the Court must first determine whether Plaintiff is

5   actually a fugitive.  <u>See</u> <u>United States v. Gonzalez</u>, 300 F.3d 1048,

6   1051 (9th Cir. 2002).  "The doctrine does not apply to [a party]

7   just because he has not reported as directed to the probation

8   office, in the absence of a showing that he has fled or hidden

9   himself from the jurisdiction of the court."  <u>Id.</u>

10      Plaintiff admits he is a fugitive who is actively evading

11  arrest.  Cordell has indicated that a warrant was issued for his

12  arrest for violating his parole conditions, and he is a "PAL"

13  (parolee-at-large).  (Compl. Attach. Civil Cover Sheet 1.)

14  Plaintiff's Complaint requests that the Court issue an injunction

15  preventing the CDC from taking any action on the warrant so that

16  Cordell can attend hearings in this case without fear of arrest.[1]

17  (Compl. 3.)

18      Plaintiff claims that although he is a parolee-at-large, he

19  should be permitted to litigate the claims in his Complaint because

20  he is challenging the legality of his parole.  (Notice of Opp'n 1-

21  2.)  This argument fails.  Courts consistently dismiss challenges

22  to the legality of convictions and sentences due to the litigants'

23  fugitive status.  <u>See</u>, <u>e.g.</u>, <u>Parretti</u>, 143 F.3d at 510-11

24  _____

25      [1] Plaintiff's Complaint and his Opposition to the Motion to Dismiss both
    state that Cordell has asked the Court to issue an injunction preventing his
26  arrest during the pendency of this case.  (Compl. 3; Opp'n 1.)  Although
    Plaintiff attempted to file a motion for preliminary injunction on March 5,
27  2007, the motion was rejected by the Court because Cordell did not provide proof
    that the motion was served on Defendants.  (Discrepancy Order Rejecting Doc.
28  [doc. no. 15] at 1.)  Thus, no motion for preliminary injunction is pending at
    this time.

07cv0079 J(RBB)

1   (dismissing appeal from denial of habeas petition when petitioner

2   skipped bail and fled the country); <u>Clark</u>, 663 F. Supp. at 1096-97

3   (dismissing habeas petition where petitioner challenging conviction

4   absconded from parole after serving his sentence).

5        It would be inequitable to allow Plaintiff to litigate his

6   claims while he remains a fugitive.  Cordell cannot both flout the

7   law and at the same time call upon it for relief.  The district

8   court should **GRANT** Defendants' Motion to Dismiss the Complaint

9   under the fugitive disentitlement doctrine.  If, however, Cordell

10  is either recaptured or surrenders, and he loses his fugitive

11  status, the disentitlement doctrine will no longer apply.  <u>Cf.</u>

12  <u>Ortega-Rodriquez v. United States</u>, 507 U.S. 234, 249-51 (1993)

13  (holding that when a criminal defendant's flight and recapture

14  occur before an appeal, the defendant's "former fugitive status"

15  does not warrant dismissal).

16  **B.   <u>Plaintiff's Claims Should Be Dismissed Because They Are Not</u>**

17  **<u>Cognizable Under 42 U.S.C. § 1983</u>**.

18       Defendants also allege that all three of Cordell's claims for

19  relief should be dismissed because they are not properly raised in

20  a civil rights action.  (Defs.' Mem. 8-9.)  Defendants state,

21  "Because Plaintiff is challenging . . . custody, his claims are not

22  cognizable under 42 U.S.C. section 1983, but must be brought by

23  petition for writ of habeas corpus."  (Reply 3.)  Plaintiff's

24  Opposition does not address this argument.

25       A civil rights suit under § 1983 is not the appropriate

26  mechanism for a person in state custody to challenge the legality

27  of a criminal conviction or sentence.  Rather, the validity of a

28  conviction or sentence should be raised in a petition for habeas

corpus.  "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck v. Humphrey, 512 U.S. 477, 481 (1994) (citing Preiser v. Rodriquez, 411 U.S. 475, 488-90 (1973)); see also Wilkinson v. Dotson, 544 U.S. 74, 78 (2005).

The Supreme Court has repeatedly emphasized "the need to ensure that state prisoners use only habeas corpus . . . remedies when they seek to invalidate the duration of their confinement -- either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81.  A prisoner's § 1983 action is barred, regardless of whether the complaint seeks damages or equitable relief, if the prisoner must demonstrate the invalidity of his confinement before he is entitled to relief.  Id. at 81-82; Heck, 411 U.S. at 487; Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997) (discussing Edwards v. Balisok, 520 U.S. 641 (1997)).

It is well-settled that habeas corpus is the exclusive remedy for a prisoner or parolee to challenge the duration of his sentence or the fact of his conviction.  Wilkinson, 544 U.S. at 78; Heck, 512 U.S. at 481.  It remains unsettled, however, whether a parolee who challenges the conditions of his parole may raise such a claim in a § 1983 case, or whether it must be raised in a habeas petition.

The Supreme Court held in Jones v. Cunningham, 371 U.S. 236 (1963), that a parolee could proceed with a habeas corpus petition

to challenge his underlying sentence because he was still "in custody" within the meaning of the habeas statute. Jones, 371 U.S. at 243. Since that decision, courts have regularly found that parolees and probationers, who are subject to restraints on their freedom that are not felt by the common public, are "in custody" and can seek habeas relief. See, e.g., Goldyn v. Hayes, 444 F.3d 1062, 1064 (9th Cir. 2006); Williamson v. Gregoire, 151 F.3d 1180, 1182-83 (9th Cir. 1998). While deciding that habeas actions may be brought by parolees, Jones and its progeny left open the question of whether habeas corpus is the exclusive remedy available for a parolee who seeks to challenge the conditions of his "custody." The Seventh Circuit is the only circuit court of appeals that has definitively answered the question.

In Drollinger v. Milligan, 552 F.2d 1220 (7th Cir. 1977), the Seventh Circuit found that habeas corpus was the exclusive means for a probationer to challenge the terms of her probation. Drollinger, 552 F.2d at 1225. The court stated:

> Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred. The elimination or substitution, for example, of one of the conditions of Rosanna's probation would free her substantially from her confinement; figuratively speaking, one of the "bars" would be removed from her cell.

Id. Because the parole conditions themselves keep a parolee "in custody," any challenge to those conditions must be brought in a habeas petition.

The Seventh Circuit again confronted the question in Williams v. Wisconsin, 336 F.3d 576 (7th Cir. 2003). There, Williams filed a civil rights action challenging a condition of his parole that

15

1  restricted him from international travel.  <u>Williams</u>, 336 F.3d at

2  579.  Relying on <u>Drollinger</u>, the court found Williams was

3  challenging a term of his custody, and accordingly, he should have

4  brought a habeas petition rather than a civil rights case.  <u>Id.</u> at

5  580.  The court explained the nature of a claim by a parolee

6  challenging his parole conditions:

> For parolees, the [difference between a civil rights
> action and a collateral attack] is more metaphysical
> [than for prisoners], because the "conditions" of parole
> <u>are</u> the confinement.  Requirements that parolees stay in
> touch with their parole officer, hold down a job, steer
> clear of criminals, or (as in Williams's case) obtain
> permission for any proposed travel outside the
> jurisdiction, are what distinguish parole from freedom.
> It is because of these restrictions that parolees remain
> "in custody" on their unexpired sentences and thus may
> initiate a collateral attack while on parole.

13  <u>Id.</u> at 579.

14      The Ninth Circuit has not addressed whether these claims are

15  exclusively the province of habeas corpus petitions or whether they

16  can also be raised in a § 1983 complaint.  In an unpublished

17  decision, the Eighth Circuit approved of and followed the Seventh

18  Circuit's analysis, finding that conditions of parole can only be

19  challenged by means of a habeas petition.  <u>Bass v. Mitchell</u>, No.

20  93-1414, 1995 U.S. App. LEXIS 9663, at *3 (8th Cir. Apr. 28, 1995)

21  (citing <u>Drollinger</u>, 552 F.2d at 1224-25).  No other circuit court

22  of appeals has addressed the issue, and the district courts have

23  come to differing conclusions.  <u>Compare</u> <u>Yahweh v. U.S. Parole</u>

24  <u>Comm'n</u>, 158 F. Supp. 2d 1332, 1340 (S.D. Fla. 2001) (finding parole

25  conditions may be challenged under either § 2254 or § 1983), <u>with</u>

26  <u>Moreno v. California</u>, 25 F. Supp. 2d 1060, 1063 (N.D. Cal. 1998)

27  (finding parole conditions are not cognizable under § 1983).

28

16

1    The Court finds that the Seventh Circuit has provided the more

2    persuasive analysis.  Without the conditions of his parole, there

3    would be nothing keeping Plaintiff "in custody."  The Supreme Court

4    has clearly found that parolees are in custody, and habeas corpus

5    petitions under 28 U.S.C. § 2254 are the appropriate vehicle for

6    challenging state custody.

7        Cordell's first and third causes of action challenge the

8    conditions of his parole.  Plaintiff argues that the condition

9    prohibiting him from entering Orange County is unconstitutional

10   because it constitutes banishment and denies him freedom of

11   association.  (Compl. 3, 5; Compl. Mem. of P. & A. at 4-7, 11-13.)

12   These claims force the Court to rule on the validity of the

13   restrictions placed on Cordell by the CDC as a part of his

14   sentence, which can only properly be done in a habeas proceeding.

15   Cf. Wilkinson, 544 U.S. at 82 (quoting Heck, 512 U.S. at 487)

16   (finding claims to be cognizable under § 1983 because a favorable

17   judgment would not "necessarily imply the invalidity" of

18   plaintiff's conviction).  Cordell asks the Court to invalidate the

19   conditions of his parole, vacate the state court's judgment, and

20   allow Plaintiff to complete his term of parole with different

21   conditions.  (Compl. Mem. of P. & A. at 13.)  This is the type of

22   immediate release from confinement that the Supreme Court has found

23   to be at "the core of habeas corpus" and not cognizable under §

24   1983.  See Wilkinson, 544 U.S. at 79 (quoting Preiser, 411 U.S. at

25   489).  Accordingly, these claims cannot be raised in a § 1983 civil

26   rights action and should be dismissed.

27       Plaintiff's second cause of action should also be dismissed;

28   the claim alleges that Cordell's parole term has been extended

1  beyond his sentence.  (Compl. 4.)  He requests that the Court order

2  his immediate release from parole, because the three-year term of

3  parole included in his plea bargain should have already expired.

4  (Id. at 7.)  Plaintiff is directly challenging the duration of his

5  sentence, which can only be done in a habeas petition.  Wilkinson,

6  544 U.S. at 81; Heck, 512 U.S. at 481.  Accordingly, the district

7  court should **DISMISS** the claims in Cordell's Complaint for failure

8  to state a claim.  See Butterfield, 120 F.3d at 1025 (affirming

9  dismissal for failure to state a claim under rule 12(b)(6) when

10 plaintiff's § 1983 claim was barred by Heck).

11 C.   **Plaintiff's Damage Claims Against Defendants Tilton and**

12      **Quintanilla Should Be Dismissed Because They Are Entitled to**

13      **Absolute Immunity.**

14      The Eleventh Amendment grants the states immunity from private

15 civil suits.  U.S. Const. amend. XI; Henry v. County of Shasta, 132

16 F.3d 512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir.

17 1998).  This immunity applies to civil rights claims brought under

18 § 1983, so an inmate cannot recover damages from the state under §

19 1983 unless the state waives its immunity.  Will v. Mich. Dep't of

20 State Police, 491 U.S. 58, 66 (1989).  A federal court only has

21 jurisdiction over a suit against a state when the relief sought is

22 "prospective injunctive relief in order to end a continuing

23 violation of federal law."  Armstrong v. Wilson, 124 F.3d 1019,

24 1025 (9th Cir. 1997) (quoting Seminole Tribe of Fla. v. Florida,

25 517 U.S. 44, 73 (1996) (internal quotations omitted).

26      Eleventh Amendment immunity also extends to state officials

27 sued in their official capacities.  "[A] suit against a state

28 official in his or her official capacity is not a suit against the

18

official but rather is a suit against the official's office."
Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  "As such, it is no different from a suit against the State itself."  Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978)).

"[T]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  Burns v. Reed, 500 U.S. 478, 486-87 (1991).  To determine whether absolute immunity is appropriate, the Court must look at the functions the officials perform rather than the titles they hold.  Anderson v. Boyd, 714 F.2d 906, 908 (9th Cir. 1983) (citing Butz v. Economou, 438 U.S. 478, 511-12 (1978)).

Parole officials are entitled to absolute immunity for actions they take that are quasi-judicial in nature, such as the decision to grant, deny, or revoke parole.  Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004); Anderson, 714 F.2d at 908-09; Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981).  Because the conditions imposed on a parolee are an integral part of the decision to grant parole, their imposition is a quasi-judicial function.  Anderson, 714 F.2d at 909 (citing Morrissey v. Brewer, 408 U.S. 471, 478 (1972)).  Accordingly, Defendants are entitled to absolute immunity for conduct relating to the imposition and enforcement of Cordell's parole conditions.  See id.

Defendants are also entitled to absolute immunity from Plaintiff's claim that they "allow[ed] him to be on parole for 6 months longer than [his] plea bargained length of 3 years" because the decision to continue or to terminate parole is "functionally

comparable" to the quasi-judicial decision to grant, deny or revoke parole.  See Swift, 384 F.3d at 1189; Anderson, 714 F.2d at 909; Sellars, 641 F.2d at 1303.

Defendants Sanchez and Trujillo, however, are not entitled to absolute immunity for actions they took in a law enforcement capacity.  "Under California's system of parole, a parole agent acts as a law enforcement official when investigating parole violations and executing parole holds."  Swift, 384 F.3d at 1191. When issuing an arrest warrant or investigating a possible parole violation, a parole agent is functioning as a police officer.  Id. at 1191-92 (citing Johnson v. Rhode Island Parole Bd. Members, 815 F.2d 5, 8 (1st Cir. 1987)).  The Ninth Circuit has held that parole agents are not entitled to absolute immunity when acting in law enforcement functions.  Id.

Accordingly, the district court should **DISMISS** Cordell's claims for monetary damages asserted against Defendants Tilton and Quintanilla because they are absolutely immune from civil liability for actions taken in their official capacity concerning the granting or revocation of parole and the imposition and enforcement of parole conditions.  Defendants Sanchez and Trujillo, however, are not entitled to absolute immunity for law enforcement actions taken in their capacity as parole agents, so Plaintiff's claims against them should not be dismissed on this ground.

D.   **Plaintiff's Claims Should Be Dismissed Because Defendants Are**
     **Entitled to Qualified Immunity.**

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A constitutional right is "clearly established" if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. Id. (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). Qualified immunity is immunity from suit for monetary damages, but it is not immunity from suit for declaratory or injunctive relief. Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006). It protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope, 536 U.S. at 736; see also Saucier v. Katz, 533 U.S. at 201. If the allegations make out a constitutional violation, the next step is to determine whether the right alleged to have been violated is "clearly established." Saucier, 533 U.S. at 201. In ruling on qualified immunity, the court must decide the "'purely legal' issue of 'whether facts alleged by the plaintiff support a claim of violation of clearly established law.'" Lytle v. Wondrash, 182 F.3d 1083, 1086 (9th Cir. 1999) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985)).

1.   **First and Third Causes of Action:  Legality of a Parole**
     **Condition Restricting Plaintiff from Orange County**

Cordell alleges in his first and third causes of action that Defendants are liable for violating his constitutional rights because they enforced a parole condition that "banished" him from Orange County, where he had lived for twenty years and had attended church and AA meetings.  (Compl. 3, 5; Opp'n 4-6, 11-13.) Plaintiff also asserts that the banishment deprived him of freedom of association.  (Compl. 5; Opp'n 11-13.)

        **a.   Violation of a Constitutional Right**

Plaintiff does not have a constitutional right to be paroled to the location of his choice.  <u>Bagley v. Harvey</u>, 718 F.2d 921, 924 (9th Cir. 1983); <u>Zupan v. Brown</u>, 5 F. Supp. 2d 792, 804 (N.D. Cal. 1998); <u>see also</u> <u>Alonzo v. Rozanski</u>, 808 F.2d 637, 638 (7th Cir. 1986).  Indeed, even being paroled to a state other than one's home state does not necessarily violate any constitutionally-protected liberty interest.  <u>See</u> <u>Bagley</u>, 718 F.2d at 925 (rejecting a claim that parolee was unconstitutionally banished when he was paroled to Iowa and forbidden from entering his home state of Washington).

But under some circumstances, parole conditions that cause the de facto banishment of a parolee can amount to an unconstitutional infringement of liberty.  <u>See</u> <u>Dear Wing Jung v. United States</u>, 312 F.2d 73, 76 (9th Cir. 1962) (finding unconstitutional banishment based on a sentencing condition that required the foreign citizen defendant to depart from the United States).  Thus, Cordell's claim that he was banished from his home due to the imposition of an unreasonable parole condition is based on a valid legal theory

22

that, under the correct factual situation, could entitle him to relief.

"[A] court granting probation [or parole] may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." United States v. Knight, 534 U.S. 112, 119 (2001).  Determining whether a parole condition is constitutionally permissible is a fact-specific inquiry.  A special condition of parole will be upheld if it has a rational basis and is reasonably related to the nature of the offense and the history and characteristics of the offender.  See United States v. T.M., 330 F.3d 1235, 1240 (9th Cir. 2003); Bagley, 718 F.2d at 925; see also Yahweh v. U.S. Parole Comm'n, 158 F. Supp. 2d 1332, 1344 (S.D. Fla. 2001) (applying the "reasonably related" test to parolee's challenge to parole conditions made on the basis of freedom of association).  A parole condition can impose no greater deprivation of liberty than is reasonably necessary to advance the government interest underlying the condition.  See United States v. Rearden, 349 F.3d 608, 621 (9th Cir. 2003).

Cordell pled guilty to assault with a deadly weapon resulting in great bodily injury.  (Compl. Ex. N at 1-2.)  He admitted, as a basis for his guilty plea, "On 12/20/00 in [Orange County] I willfully and unlawfully assaulted [the victim] with a deadly weapon, a wooden dowel, and I personally inflicted great bodily injury upon [her] in the form of a broken finger and 50+ stitches, with the specific intent to do so."  (Id. at 2.)  Plaintiff thus admitted he was a violent offender.

Cordell's victim requested that Plaintiff not be returned to Orange County upon his release from prison.  (See Compl. Ex. A at

1.)  As a result of the victim's request and CDC's concerns for her safety, Cordell was paroled to San Diego rather than Orange County. (_Id._)  He was placed under "High Control" parole supervision because of the violent nature of his offense.  (_Id._)

Plaintiff's parole condition was rationally related to his offense.  The CDC's decision to prevent Cordell from entering Orange County while on parole was based on the concern that Plaintiff would be a danger to his victim if paroled near her home, and on the victim's stated desire to keep Cordell away from her. This is a rational basis for restricting Plaintiff from Orange County, and it is reasonably related to the violent nature of Cordell's offense.  _Cf._ _Samson v. California_, 547 U.S. __, 126 S. Ct. 2193, 2200 (2006) (discussing the state's substantial interest in supervising parolees because they are likely to reoffend).

The facts of the present case are similar to _Bagley_.  In that case, Bagley was paroled to Iowa, even though his home state was Washington.  _Bagley_, 718 F.2d at 923.  He was given a special condition of parole that prohibited him from returning to Washington during the term of his parole.  _Id._  Bagley contended that the condition violated his right to choose the location of his home and thus infringed his constitutional right to interstate travel.  _Id._  The court disagreed, finding that "a parolee does not have a constitutional interest that entitles him to parole in any particular district."  _Id._ at 924.  The court upheld the condition, which was reasonably related to Bagley's history of threatening witnesses in the Seattle, Washington area.  _Id._

Plaintiff's case, however, differs from _Bagley_ in one important respect.  Bagley's parole condition was not absolute; he

could travel to Washington for purposes of litigation or child visitation with the parole commissioner's prior approval.  <u>Id.</u> at 923.  Here, Cordell is absolutely prohibited from entering Orange County, with no possible exceptions.  (<u>See</u> Compl. Ex. A at 1, Ex. Ex. B at 1, Ex. C at 2 (stating the prohibition from entering Orange County as an absolute).)  The severity of this condition is evidenced by the fact that two of Plaintiff's parole violations occurred when he was attempting to visit his family and his children, who reside in Orange County.  (Compl. Mem. of P. & A. at 1, 3.)

Taken in a light most favorable to Cordell, Plaintiff's Complaint sufficiently alleges the violation of a constitutional right, because the parole condition that absolutely restricts Cordell from entering Orange County for any reason may be overbroad.  The condition is reasonably related to the government's interest in protecting the safety of the victim, but it may involve a greater deprivation of liberty than is necessary to accomplish its purpose.

Other cases that have upheld restrictive parole conditions have done so explicitly because the conditions in those cases provided an exception whereby the parole agent or another supervisor could give express permission for the parolee to exceed the condition.  <u>See</u>, <u>e.g.</u>, <u>Rearden</u>, 349 F.3d 608 (upholding parole condition prohibiting use of the internet because it provided an exception for access with prior consent of probation officer); <u>United States v. Zinn</u>, 321 F.3d 1084, 1093 (11th Cri. 2003) (same); <u>Bagley</u>, 718 F.2d at 923-24 (upholding condition prohibiting parolee from entering Washington unless he first received permission from

the parole commissioner for purposes of litigation or child visitation).  Here, Plaintiff's conditions contain no exception.

For the purposes of the qualified immunity analysis, the Court need only look at whether, taken in the light most favorable to the Plaintiff, the Complaint sets forth factual allegations showing that the Defendants' conduct violated a constitutional right. Saucier, 533 U.S. at 201.  On the facts alleged, Cordell has sufficiently alleged a constitutional violation because the condition of his parole absolutely restricting him from entering Orange County is not reasonably necessary to accomplish the government's goal of protecting the safety of the victim.

### b.  Whether the Right Was Clearly Established

Although Plaintiff's claims of illegal banishment and denial of freedom of association allege constitutional violations, the qualified immunity analysis also requires this Court to determine whether those rights were clearly established.  Saucier v. Katz, 533 U.S. at 201.  "Whether the right at issue in a claim of qualified immunity is clearly established is judged as of the date of the incident alleged and is a pure question of law . . . ." Phillips v. Hust, 477 F.3d 1070, 1079 (9th Cir. 2007) (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993)).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. at 640; see also Saucier, 533 U.S. at 202.

"[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity."  Dittman v. California, 191 F.3d 1020, 1027

26

(9th Cir. 1999) (citing <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1210 (9th Cir. 1994)).  But qualified immunity will not be granted to a public official who enforces a statute that is "patently violative of fundamental constitutional principles."  <u>Grossman</u>, 33 F.3d 1209.

California Penal Code section 3003 provides that "an inmate who is released on parole shall be returned to the county that was the last legal residence of the inmate prior to his or her incarceration."  Cal. Penal Code § 3003(a) (West Supp. 2007).  But "an inmate may be returned to another county if that would be in the best interests of the public."  Cal. Penal Code § 3003(b).  The best interests of the public are determined, in part, by the need to protect the safety of the victim, a witness, or any other person, and the chance that a certain location will reduce the inmate's chance of successfully completing parole.  Cal. Penal Code. §§ 3003(b)(1)-(2).  Additionally, "an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of . . . a felony in which the defendant inflicts great bodily injury[,]" if the victim requests additional distance and the CDC finds there is a need to protect the victim's safety.  Cal. Penal Code § 3003(f).

In imposing the conditions of Cordell's parole, the Defendants relied on these statutes.  Defendants determined that the interests of the public were best served by releasing Plaintiff to a county away from the victim's home, which is authorized by California Penal Code section 3003.  These statutory provisions were duly enacted by the California legislature, and the Court is not aware of any case law in which their constitutionality was seriously

questioned.  For qualified immunity to be withheld, "in the light of preexisting law the unlawfulness [of the officer's conduct] must be apparent." Anderson, 483 U.S. at 640.  The California parole regulations are not obviously unconstitutional, and accordingly, Plaintiff cannot prove that Defendants have violated Cordell's clearly established constitutional rights by following them. Defendants are entitled to qualified immunity for Cordell's first and third claims for relief.

> **2.    Second Cause of Action:  Legality of the Extension of Plaintiff's Parole Period Beyond Three Years**

Plaintiff asserts in his second claim that Defendants violated his right to due process by extending his term of parole beyond the three-year period included in his plea agreement.  (Compl. 4; Compl. Mem. of P. & A. at 7-11.)  Cordell was informed during a term of recommitment to prison following a parole violation that the time during which he was incarcerated for the revocation would be added onto his parole term.  (Compl. Mem. of P. & A. at 8.)  He complains that this constitutes an unconstitutional extension of his sentence.  (Id. at 8-9.)

> **a.    Violation of a Constitutional Right**

Under California law, the "[t]ime during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation."  Cal. Penal Code § 3000(b)(5) (West Supp. 2007); see also Cal. Code Regs. tit. 15, § 2515(a) (West 2007). Accordingly, the time that Plaintiff served for each of his parole violations is not counted towards the three-year parole period.

28

The "extension" of Cordell's parole for the periods that he was in custody was done in compliance with California law.  Plaintiff contends, however, that this "extension" violated his due process rights because it subjected him to punishment beyond the term he agreed to, and "[t]he CDC has no constitutional or legal right to change such an agreement."  (Compl. Mem. of P. & A. at 10.)

A criminal defendant who pleads guilty in exchange for certain promised actions is entitled to fulfillment of those promises.  Santobello v. New York, 404 U.S. 257, 262 (1971); Davis v. Woodford, 446 F.3d 957, 960-61 (9th Cir. 2006).  Due process requires that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Santobello, 404 U.S. at 262; Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006).  One remedy for the government's breach of a plea agreement is resentencing.  See Gunn v. Ignacio, 263 F.3d 965, 971 (9th Cir. 2001) (granting habeas petition and remanding to state court for resentencing).

The interpretation of state plea agreements is governed by state law.  Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987); Buckley, 441 F.3d at 694-95.  In California, all contracts, including plea agreements, are deemed to incorporate existing state law even if they do not contain an explicit provision to that effect.  Davis, 446 F.3d at 962 (citing People v. Gipson, 117 Cal. App. 4th 1065, 1069-70, 12 Cal. Rptr. 3d 478, 481 (Ct. App. 2004)).

Plaintiff's plea agreement did not expressly incorporate California Penal Code section 3000.  (See Compl. Ex. N.) Nevertheless, the agreement incorporated all existing California

29

law as well as any future amendments to the applicable California statutes.  <u>Davis</u>, 446 F.3d at 962 (citing <u>Gipson</u>, 117 Cal. App. 4th at 1070, 12 Cal. Rptr. 3d at 481).  Existing California law provided that periods when Cordell was in custody for parole violations were not counted towards his three-year period of parole; Plaintiff was to serve three years of parole, out of custody.  <u>See</u> Cal. Penal Code § 3000(b)(5).  Consequently, the CDC did not violate Cordell's plea bargain by "extending" his agreed-upon sentence.  Plaintiff has not demonstrated that his constitutional rights to due process were violated.  <u>Cf.</u> <u>Wallace v. Greer</u>, 821 F.2d 1274, 1278 (7th Cir. 1987) (granting summary judgment for defendant in § 1983 case where plaintiff claimed his sentence was illegally extended, because plaintiff's term of mandatory supervised release was tolled under state law during the time he had absconded from parole supervision).

**b.   Whether the Right Was Clearly Established**

As was the case with Cordell's first and third causes of action, the parole conditions Plaintiff complains of in his second cause of action were set pursuant to duly-enacted statutes.  <u>See</u> <u>Dittman</u>, 191 F.3d at 1027.  Thus, even if Plaintiff could make out a due process claim, Defendants are entitled to qualified immunity because the term of Cordell's parole was calculated in accordance with the applicable California statutes.  A reasonable parole officer or official would have believed that reliance on provisions of the California Penal Code was appropriate and in compliance with constitutional standards.

Accordingly, Defendants are entitled to qualified immunity for all three of Plaintiff's claims. Cordell's claims for damages should be **DISMISSED**.

**E.   Plaintiff's Claims Are Without Merit.**

Defendants also assert that Plaintiff's claims should be dismissed because the facts alleged fail to state a constitutional claim that would entitle him to relief. (Defs.' Mem. 10-11; Reply 3-4.) Claims one and three, Defendants allege, will not entitle Cordell to relief because Plaintiff's parole conditions are rationally related to his offense. (Defs.' Mem. 10.) Defendants claim that ground two fails to state a claim because they have not violated Cordell's plea agreement. (Id. at 11.)

Pursuant to Rule 12(b)(6), the Court may grant a motion to dismiss for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The Court must assume the Plaintiff's factual allegations are true and resolve all reasonable inferences in his favor. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). When reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Hydrick v. Hunter, 466 F.3d 676, 686 (9th Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

1    **1.   Claims One and Three:  Banishment**

2        In his first claim for relief, Plaintiff asserts that the

3    parole condition prohibiting him from entering Orange County is

4    "illegal and unconstitutional."  (Compl. 3.)  He contends that

5    Defendants are liable for this unconstitutional "banishment"

6    because they imposed and enforced the parole condition, which is

7    "unreasonable, not rehabilitative and too broad."  (Compl. Mem. of

8    P. & A. at 4.) Because he was not allowed to return to Orange

9    County, he says, his marriage was "strained . . . to the point of

10   divorce, costing him his house of 14 years, as well as child

11   support."  (Id.)  He claims that he was again banished after his

12   second parole violation when he was paroled to Riverside County

13   rather than San Diego, where he had attempted to create a new life.

14   (Compl. 3; Compl. Mem. of P. & A. at 3.)  Plaintiff complains that

15   he was "banished from his home, children, church and employment."

16   (Compl. Mem. of P. & A. at 2.)  Defendants argue, on the other

17   hand, that Cordell is not entitled to relief because the parole

18   conditions imposed are rationally related to his violent offense,

19   so his claims should be dismissed for failure to state a claim

20   under Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mem. 10.)

21       As discussed above, the condition of Cordell's parole that

22   prevented him from living in Orange County had a rational basis and

23   was reasonably related to his crime and the interests of public

24   safety.  But the condition was overbroad because it was an absolute

25   prohibition and did not provide any exceptions.  The government's

26   desire to protect the safety of Plaintiff's victim does not require

27   an absolute prohibition, under all circumstances, from entering

28   Orange County.  Viewing the facts in a light most favorable to

Cordell, Plaintiff's Complaint sufficiently alleges a constitutional violation, and thus, dismissal under 12(b)(6) for failure to state a claim is not warranted.  Defendants' Motion to Dismiss claims one and three should be **DENIED**.

### 2.   Claim Two:  Violation of Plaintiff's Plea Agreement

Cordell alleges in claim two of his Complaint that Defendants have illegally violated his plea agreement by keeping him on parole after the expiration of the three-year parole term contained in the agreement.  (Compl. 4; Compl. Pl.'s Mem. of P. & A. at 7-8.)  As discussed above, however, Defendants did not violate Plaintiff's plea agreement.  The agreement incorporated a California Penal Code provision which provides that time during which a parolee is in custody for a parole violation is not counted towards the parole period.  Cordell was subject to three years of parole, not including the time that he served for each of his parole violations.  Defendants did not violate Plaintiff's plea agreement. Accordingly, Cordell's second claim should be **DISMISSED** for the additional reason that it fails to state a claim under Rule 12(b)(6).

### IV. PLAINTIFF'S MOTION TO AMEND

Plaintiff has filed a Motion to Amend Complaint [doc. no. 11], in which he seeks to amend his Complaint to sue the Defendants in their individual capacities rather than their official capacities. (Mot. to Amend 1.)  The Motion was filed after Defendants filed their Motion to Dismiss and appears to be an attempt to avoid the dismissal of Plaintiff's Complaint based on the absolute or qualified immunity of Defendants for actions taken in their official capacities.

07cv0079 J(RBB)

The Court must grant a pro se litigant leave to amend his complaint "even if no request to amend the pleading was made, unless [the Court] determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d at 1127 (quotations and citations omitted); Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987). "Failure to grant leave to amend the complaint . . . 'is improper unless it is clear . . . that the complaint could not be saved by any amendment.'" Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) (quoting Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004)). "'[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant.'" Lopez, 203 F.3d at 1131 (quoting Noll, 809 F.2d at 1448). It is only where a complaint lacks merit entirely or amendment of a pro se litigant's complaint would be futile that denial of leave to amend is appropriate. Id. at 1129; Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Here, granting Plaintiff leave to amend the Complaint would be futile. Even if Cordell were to amend his Complaint to assert claims against Defendants in their individual capacities, the Complaint is still defective. As discussed above, the Complaint should be dismissed because Plaintiff's claims can only be brought in a habeas corpus petition, not in a § 1983 civil rights complaint. Additionally, Cordell is currently a fugitive from justice and is not entitled to proceed with the prosecution of this action. Granting Plaintiff leave to amend would not cure either of these defects. Thus, Cordell's Motion to Amend should be **DENIED**. //

34

### V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be **GRANTED**, and this action should be **DISMISSED WITH PREJUDICE** in its entirety.  Plaintiff's Motion for Leave of Court to Amend Complaint should be **DENIED**.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before August 31, 2007.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before September 13, 2007.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   August 8, 2007

RUBEN B. BROOKS
United States Magistrate Judge

cc:      Judge Jones
         All Parties of Record

07cv0079 J(RBB)